UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBION AUTOMOTIVE, LTD.,

    Plaintiff,

v.                                          Case No. 03-CV-73421-DT

AMERICAN INTERNATIONAL SPECIALITY
LINES INSURANCE COMPANY,

    Defendant.
_____/

**AMENDED FINDINGS AND CONCLUSIONS[1]**

This matter originally came before the court on cross motions for summary judgment.[2] After hearing oral argument on the motions on April 6, 2005, however, the court found this matter would be best resolved as a trial on the papers pursuant to Federal Rule of Civil Procedure 52. At the hearing, the parties agreed to submit the matter for court determination pursuant to Fed. R. Civ. P. 52, stipulating that the court need only interpret the evidence presented in the record.

**I. BACKGROUND**

Plaintiff Albion Automotive, Ltd. ("Albion") is a corporation organized under the laws of Scotland and is a subsidiary of American Axle & Manufacturing, Inc. ("American Axle"). (Ex. 1 at ¶ 5, 8.) Defendant American International Specialty Lines Insurance

---

[1] The court enters its Amended Findings and Conclusions, following the filing on June 10, 2005 of its original Findings and Conclusions [Dkt. # 56]. The only change from the original order is reflected on page five. The words "does not" were added to the fourth line of the first full paragraph on the page.

[2] On January 31, 2005, Defendant filed its "Motion for Summary Judgment" [Dkt. # 26] and Plaintiff filed its "Partial Motion for Summary Judgment" [Dkt. # 38].

Company ("AISLIC") is an Alaskan insurance company with its principal place of business in New Jersey.  (Ex. 1 at ¶ 6; Ex. 2 at ¶ 6.)  The case arises out of AISLIC's alleged breach of its obligation to defend and indemnify Plaintiff for claims and losses covered under employment practices liability insurance policies ("EPLI") issued to American Axle.[3]  (Pl.'s Am. Compl. at ¶ 1.)

In 1995, Albion purchased from Volvo the plant in the United Kingdom known as the Farington plant.  (Ex. 1 at ¶ 16; Ex. 5 at 7.)  Several years later, in early 1999, Albion laid off twenty-one (21) employees who worked at the plant.  (Ex. 5 at 8.)  Before this layoff was implemented, meetings were held between representatives of the twenty-one (21) employees who would be affected by the layoff and company management.  (*Id.*)  These meetings took place on January 4, 11, 12, and 14, 1999.  (*Id.*)  At these meetings, Albion advised its employees and their representatives that, although it would make the statutory redundancy payments, it would not make any enhanced redundancy payments.  (*Id.*)  The 21 applicants brought claims for breach of contract against Albion, asserting that "they were contractually entitled to receive an enhanced redundancy payment which represented £ 1,000 for each completed year of service and £ 90 for

---

[3] In its Amended Complaint, Plaintiff refers to one insurance policy, Insurance Policy Number 267-79-04, and in its "Response to Defendant's Statement of Material Facts," Plaintiff expressly denies that both polices are the subject of the lawsuit.  (Pl.'s Resp. at ¶ 3.)  However, Defendant notes in its "Motion for Summary Judgment" that the EPLI policies are claims-made policies and the 1999 layoff claim is governed by the First EPLI policy and the 2002 plant closure is governed by the Second EPLI policy.  (Def.'s Mot. at 1, 4.)  The court will discuss each policy in turn.  The First EPLI Policy (Policy Number 267-79-04) was effective from January 29, 1999 to January 29, 2002.  (Ex. 3.)  The Second EPLI Policy (Policy Number 213-82-15) was effective from January 29, 2002 to January 29, 2003.  (Ex. 4.)  Both policies contain identical definitions of the terms relevant to the instant case.

each additional completed month of service." (Ex. 5 at 2.) In January 2000, the UK Employment Tribunal issued a decision regarding the breach of contract claims.[4] In its decision, the Tribunal found that "although there [was] no evidence that any employees actually entered into employment on the faith of an expectation that enhanced terms would be applied," the making of these enhanced payments had "become a 'term of the applicants' contracts of employment." (Ex. 5 at 11.)

In November 2001, two representatives from American Axle's insurance broker's office (Peter Rooney and Matthew Snyder of AON), met with American Axle's Risk manager, Jean Marusak, to discuss, among other topics, renewing the EPLI policy. (Rooney Dep. at 25-26; Marusak Dep. at 84-85.) At the conclusion of the November 2001 meeting, Mr. Rooney and Mr. Snyder met with American Axle's in-house counsel, Richard Raymond. (Def.'s Mot. at ¶ 19; Pl.'s Resp. to Def.'s Statement of Material Facts at ¶ 19.) It was at this November 2001 meeting that anyone at AON was told about the 1999 layoff. (Rooney Dep. at 27; Raymond Dep. at 96-98.) On November 13, 2001, Mr. Rooney provided AISLIC with notice of the 1999 layoff claim. (Ex. 12.) On December 14, 2001, AISLIC acknowledged receipt of this claim and requested information to enable AISLIC to properly evaluate the possibility of coverage. (Ex. 13.)

On February 15, 2002, after the Second EPLI policy had taken effect, Albion decided to close the Farington plant. (Paige Dep. at 30-31.) In May 2002, Albion

---

[4] The parties stipulated to the factual statements contained in the Employment Tribunal's opinion, dated January 17-19, 2000 [Dkt. # 25].

entered into compromise agreements with the employees affected by the plant closure. (Ex. 18.)

In Count I of its Amended Complaint, Albion seeks a declaratory judgment against Defendant and in Count II Albion asserts a breach of contract claim.

## II.  STANDARD

Federal Rule of Civil Procedure 52(c) allows for a judgment to be entered when an issue has been fully presented, and that issue is determinative of the case.

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue . . . .

Fed. R. Civ. P. 52(c).  The Sixth Circuit has indicated that in making a Rule 52(c) determination, the court need not follow the traditional summary judgment standards. *See Johnson v. Luttrell*, No. 98-5375, 1999 WL 645288, at *1 (6th Cir. Aug. 13, 1999) ("In ruling on a motion for judgment on partial findings, a district court need not consider the evidence presented in the light most favorable to the plaintiff, and may grant the motion if it believes the plaintiff failed to make out her case."); *see also Anderson v. United States*, 82 F.3d 417 (Table), No. 95-5938, 1996 WL 185762, at *1 (6th Cir. Apr. 17, 1996).  Furthermore, a judgment under Rule 52(c) must "be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule."  Fed. R. Civ. P. 52(c).

### III. FINDINGS AND CONCLUSIONS

#### A. The Policies

Under the terms of both the first and second EPLI policies, Albion is entitled to indemnification for redundancy payments where those redundancy payments constitute a "loss" within the meaning of the policy. (Ex. 3 at 4; Ex. 4 at 2.) Both policies provide in relevant part that "loss" does not include "employment-related benefits, stock options, perquisites, deferred compensation[,] or any other type of compensation *other than salary, wages, or bonus compensation.*" (*Id.*) (emphasis added.) There is no dispute that the payments are compensation, therefore Plaintiff is entitled to indemnification with respect to these enhanced redundancy payments only if they constitute salary, wages, or bonus. The question before the court is whether the enhanced redundancy payments that Albion paid constitute compensation other than salary, wages, or bonus.

#### B. Redundancy Payments

The meaning of a "redundancy payment" determines whether the payments are excluded from the definition of "loss" as compensation other than salary, wages, or bonus payments. (Exs. 3, 4.) Under Section 139(1) of England's Employment Rights Act 1996, an employee will be dismissed by reason of redundancy if the dismissal is wholly or mainly attributable to:

> (a) the fact that his employer has ceased or intends to cease-
>     (i) to carry on the business for the purposes of which the employee was employed by him, or
>     (ii) to carry on that business in the place where the employee was so employed, or
> (b) the fact that the requirements of that business-
>     (i) for employees to carry out work of a particular kind, or
>     (ii) for employees to carry out work of a particular kind in the place where

> the employee was employed by the employer, have ceased or diminished or are expected to cease or diminish.

Employment Rights Act, 1996, c. 18, § 139(1). Defendant's expert, Mr. Stefan Martin, a partner at Allen & Overy, LLP, is an English law qualified solicitor whose practice involves a broad range of domestic employment issues. (Ex. 6 at 2.) According to Martin, an employee who is dismissed is considered terminated by reason of redundancy where:

> the employee is dismissed because he is no longer needed by the business which employs him. A typical example would be if a business were to decide to close a plant or factory. The employees at the plant or factory would be dismissed by reason of redundancy or "made redundant." Redundancies also occur, for example, where employees are dismissed because the number of employees needed by the employer for the level of business it has is reduced or diminished.

(*Id.* at 3.)

Pursuant to the Employment Rights Act, 1996, c. 18, § 135(1)-(2) and § 155, a statutory redundancy payment is payable when an employee, who has been continuously employed by his employer for at least two years, is dismissed by reason of redundancy. *Id.* at § 135(1)-(2) and § 155. The amount of the redundancy is calculated based on the employee's age, years of employment, and level of pay. *Id.* at § 162. Voluntary, non-statutory redundancy payments are described as "enhanced redundancy payments" and the monetary amount of the enhanced redundancy payment is in the employer's discretion. (Ex. 6 at 3.)

Having examined the meaning of a redundancy payment, the court must now turn to the issue of how such payments are characterized under the insurance policy's definition of "loss." According to § 27(1)-(2) of the Employment Rights Act, payments

6

"referable to the worker's redundancy" are explicitly excluded from the definition of wages. Employment Rights Act, 1996, c. 18, § 27(2). In addition, the House of Lords in *Mairs (Inspector of Taxes) v. Haughey*, [1994] 1 A.C. 303, held that:

> A redundancy payment has therefore a real element of compensating or relieving an employee for the consequences of his not being able to continue to earn a living in his former employment. The redundancy legislation reflects an appreciation that an employee who has remained in employment for the minimum time has a stake in his employment which justifies his receiving compensation if he loses that stake. It is distinct from the damages to which he would be entitled if his employment were terminated unlawfully. It is also unlike a deferred payment of wages in that the entitlement to a redundancy payment is never more than a contingent entitlement, which no doubt both the employer and employee normally hope will never accrue.

*Id.* at 320.

According to Harvey on Industrial Relations and Employment Law, "by both principle and precedent, redundancy pay, whether statutory or non-statutory is properly to be regarded as compensation for loss of continued employment and not as payment for past employment." Harvey on Industrial Relations and Employment Law at ¶ 37. Therefore, it is not salary or wages. *Id.*

Albion argued at the hearing and in its motion that "the rational[e] behind the enhanced payments was to make sure that there would be an orderly redundancy without interference, slow downs, or work stoppages by the employees" and the payments "were clearly terminal bonuses paid in exchange for the employees continued good production as set forth in the agreements that they signed." (Pl.'s Mot. at 12, 17.) The court does not find that this description of Albion's alleged intention in making the payments counters the overwhelming evidence that the redundancy payments do not constitute salary, wages, or bonus payments. The court also notes that Albion did not

7

make the payments until after the Employment Tribunal ordered it to do so in February 2000, thereby undermining its argument that the payments were to be terminal bonuses with the goal to insure that production was not interrupted.  (Ex. 5 at 11-12.)

Based on the evidence detailed above, the court finds that redundancy payments are compensation, but do not comprise salary, wages, or bonus payments.  The court also finds that the insurance policy is not ambiguous, as the case law and statutory authority suggest that redundancy payments are not salary, wages, or bonus payments, and there is no conflicting assertion made in the insurance policy itself.

## IV.  CONCLUSION

Upon review of the papers and the evidence submitted under Rule 52, the court finds in favor of Defendant and against Plaintiff.  A judgment in favor of Defendant will issue.

       s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  June 16, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 16, 2005, by electronic and/or ordinary mail.

       s/Lisa G. Teets  
Case Manager and Deputy Clerk  
(313) 234-5522